178 Ariz. 389 (1994)
873 P.2d 1311
STATE of Arizona, ex rel., Arizona DEPARTMENT OF REVENUE
v.
John D. and Gail D. DRIGGS.
No. TX 92-00972.
Tax Court of Arizona.
May 2, 1994.
Mary H. DeLaat, Atty. Gen., Phoenix, for plaintiff.
Stephen C. Newmark, Phoenix, for defendant.
OPINION
SCHAFER, Judge.
In 1986, John and Gail Driggs filed an income tax return with the Arizona Department of Revenue. As part of their income that year the Driggses had received Arizona corporate dividend income which they reported on the Arizona income tax return. Also on their return, the Driggses, following the Department's tax forms and instructions, computed and took a subtraction for federal income tax paid. Everyone now agrees that the form and instructions were incorrect. The Department now wants to correct its mistake and collect the taxes it should have collected.
The facts are not in dispute. According to the Department's 1986 Arizona income tax instruction booklet, proration of the federal income tax subtraction begins with federal adjusted gross income (FAGI). Specific items of income subtracted from FAGI on the return are also subtracted from FAGI for proration purposes. The net amount is divided by FAGI. The result is the percentage of federal income tax paid during the year which is allowable as a subtraction from Arizona gross income. Unfortunately, the instructions *390 for the 1986 income tax forms did not indicate that Arizona corporate dividend income should be subtracted in the worksheet computation. No line was provided for subtraction of this dividend income; not even a line for an "other subtraction" adjustment was provided.
The Department admits that nowhere in the 1986 forms or instructions were the Driggses (or the hundreds of other taxpayers using the forms) instructed to prorate Arizona corporate dividend income when determining the amount of the subtraction for federal income tax paid. In fact, none of the forms for tax years 1975 through 1988, a fourteen-year period, indicated that any adjustments were required to be made to the federal income tax paid figure to account for Arizona corporate dividend income.
It is the Department's contention that because the Driggses did not adjust the amount of federal tax paid to reflect the receipt of the Arizona corporate dividend income which was not taxable by Arizona, the subtraction was too large, resulting in the Driggses paying too little in taxes. The Driggses contend that because they calculated the federal tax paid subtraction in accordance with the Department's forms and instructions, the Department is estopped to argue the forms and instructions were wrong and to require the Driggses to pay an additional assessment, plus interest, for tax year 1986.[1]
ANALYSIS
Estoppel requires: (1) affirmative actions or conduct inconsistent with a position later taken; (2) action by a party relying on such conduct; and (3) injury to the party resulting from a repudiation of such conduct. Decker v. Hendricks, 97 Ariz. 36, 396 P.2d 609 (1964); Dunn v. Progress Industries, Inc., 153 Ariz. 62, 734 P.2d 604 (App. 1986).
It has long been the rule in Arizona that estoppel will be applied against the taxing authorities only in rare and unique circumstances. See e.g., Arizona Tax Commission v. Dairy & Consumers Cooperative Association, 70 Ariz. 7, 215 P.2d 235 (1950), Crane Company v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656 (1945). However, estoppel against the Department was recently recognized as a viable defense to an additional assessment in Tucson Electric Power Company v. Arizona Department of Revenue, 174 Ariz. 507, 851 P.2d 132 (App. 1993).
The taxpayer in Tucson was informed by a Department employee that certain certifications made by New Mexico officials would be sufficient to comply with the Arizona statute's certification requirements, thereby allowing the taxpayer to qualify for the accelerated depreciation deduction under former A.R.S. § 43-1030 relating to the installation of pollution control devices. The taxpayer took the deduction on its 1979, 1980 and 1981 income tax returns. The Department audited the taxpayer and disallowed the deduction. The Tucson court held (1) the taxpayer did not factually comply with the statutory requirements for the deduction, but (2) the Department was estopped to deny such noncompliance. Tucson Electric Power, 174 Ariz. at 513 and 517, 851 P.2d at 138 and 142.
Recognizing that estoppel is rarely found in tax cases, the Tucson court limited its holding by noting:
We have previously pointed out in this opinion a critical distinction between the situation presented in this case [where "the taxpayer is not relying upon estoppel to avoid the application of a taxing statute to activities contemplated by the statute"] and the situations presented in prior Arizona decisions that have refused to permit the application of estoppel against the taxing authorities. In those cases, the application of estoppel would have directly and substantially impinged upon the state's sovereign power to levy taxes, since the representations or conduct of the taxing *391 authorities relied upon by the taxpayer related directly to whether the taxpayer's activities were taxable.
Id. at 516, 851 P.2d at 141. The Tucson court distinguished prior Arizona cases refusing to apply estoppel holding:
The representations of the Department of Revenue that the taxpayer relies upon for its estoppel argument were not that the taxpayer's activities were not taxable. Rather, they related solely to a procedural matter  the sufficiency of compliance by the taxpayer with the statute's certification requirements.
Id. at 515, 851 P.2d at 140. The court went on to state:
[C]onsideration should be given in each instance to the injustice that might result from the application of the [general no estoppel] rule, balanced against the effect that non-application would have on the state's effective exercise of its sovereignty and any resulting damage to the public interest.... [T]he sovereign can be estopped if the government's wrongful conduct threatens to work a serious injustice and if the public interest would not be unduly damaged by the imposition of estoppel.
Id. at 516, 851 P.2d at 141 (citing Freightways, Inc. v. Arizona Corp. Comm'n, 129 Ariz. 245, 630 P.2d 541 (1981)).
The Driggses have a right to rely on the forms and instructions disseminated by the Department. The Arizona Legislature has deemed it mandatory that all returns be filed in the form prescribed by the Department. A.R.S. § 43-323. As was stated by a leading authority on federal income tax:
The importance of the tax return as the basic document on which the self assessment system rests is attested by the numerous statutory provisions requiring returns to be filed, specifying their filing dates, imposing penalties for filing negligent or fraudulent return and for failing to file, and attaching legal consequences to the fact of filing, the date of filing, and the information included.
4 Bittker and Lokken, Federal Taxation of Income, Estates and Gifts, ¶ 111.1.1 (2d ed. 1992).
Here, for some fourteen years the instructions and forms of the Department explicitly stated how deductions for federal income taxes paid were to be calculated. The instructions and forms left no room for even slight variations in the formula the Department required be used. The method of calculation of the deduction is nothing more than a procedural fill-in-the-blank computation. There is no dispute that the Driggses followed the Department's forms and instructions.
The application of estoppel in this case does not unduly interfere with the State's power to levy taxes since the representations in the forms and instructions followed by the Driggses did not relate to whether the Driggses were liable for a tax, but rather, related solely to a procedural matter  the mathematical calculation of the percentage of a subtraction. Nor is there any resulting damage to the public interest. There would be, however, substantial damage to this taxpayer and a number of others, if the forms and instructions published, disseminated and required by the Department were held unreliable and subject to retroactive correction. Consequently, the Department is estopped to collect the additional assessment in this case.
This case is different from the recent opinion of this Court in Valencia v. Arizona Department of Revenue, No. TX 93-00277 (Minute Entry issued March 11, 1994). In that case Valencia argued that the Department should be estopped from applying the transaction privilege tax to Valencia's coal supplying operations because the Department had earlier informed Valencia that some of its activities were not subject to the tax. This Court rejected Valencia's argument, citing Tucson Electric Power. The Court of Appeals in Tucson applied estoppel against the Department because of its representations to the taxpayer about the required procedures and method for computation of the tax. The Tucson Court limited the application of estoppel to situations involving procedural matters and pointed out that estoppel will not be applied against the Department *392 when the taxpayer seeks to avoid the payment of an applicable tax. In this case, the Driggses do not seek to avoid payment of the tax, Valencia did; thus, the difference.
CONCLUSION
There is a narrow class of cases when estoppel may be a viable taxpayer defense  only in cases where representations made by Department employees involve procedural matters alone, not when the applicability of a tax is involved. The mathematical computation of a deduction is such a procedural matter. Therefore, the Department is estopped from collecting the additional assessment.
IT IS ORDERED denying Plaintiffs' Motion for Summary Judgment.
IT IS FURTHER ORDERED granting Defendants' Cross-Motion for Summary Judgment and awarding Defendants attorneys' fees and costs.
This opinion is not a final, appealable judgment; other orders will follow. See Devenir Associates v. City of Phoenix, 169 Ariz. 500, 821 P.2d 161 (1991).
NOTES
[1] The Department originally issued the Driggses a notice of proposed assessment of individual income taxes in the amount of $7,644.88, plus penalties and interest for tax year 1986. The Driggses timely protested the proposed assessment which resulted in the Department's reduction of the alleged deficiency to $1,428.08 plus interest with no penalties. The Driggses appealed to the Arizona State Board of Tax Appeals which ruled in their favor, canceling the additional assessment. The Department filed the appeal to this Court.